**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CR-00169RWS/NAB |
| | ) | |
| **DONALD L. TATE,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The defendant, Donald Tate ("Defendant"), filed a motion to suppress statements and evidence on May 25, 2011 [Doc. #21]. Defendant filed a motion to withdraw the motion to suppress on May 31, 2011. [Doc. #23]. Defendant re-filed his motion to suppress and the undersigned conducted a hearing on the motion on June 21, 2011. The United States of America filed its Response to the Motion to Suppress Statements and Evidence on July 1, 2011. [Doc. #39]. Based upon evidence adduced at the hearing, as well as a review of the transcript and briefs of the parties, the undersigned makes the following findings of fact and conclusions of law.

**Findings of Fact**

Samuel Jefferson has worked as a police officer in the City of St. Louis for nineteen years. On October 13, 2010, Jefferson. was working "secondary" at the Imperial Palace nightclub located at 2543 North Grand in St. Louis, Missouri. Jefferson explained that "secondary" gives off-duty officers the opportunity to make a little extra money by monitoring the front and the parking lots of establishments for the safety of the patrons. On that evening, his job was to monitor the front of the

business.  In addition, four other uniformed police officers were working secondary at the club on that evening.

Jefferson testified that the Imperial Palace has a capacity of 1500 people and it is located in a high crime area.  He stated that the area has an average of two robberies per week.  On the night in question, Jefferson testified that the club was very busy because it was "two dollar Tuesday."  He stated that a patron approached him and other officers at the front of the club and told them that a man had displayed a revolver on the corner of Montgomery and Grand.  The witness pointed to the man, who was standing across the street from the officers.  Jefferson and Lt. Smoot then got into a police car and approached the subject.

As Jefferson and Lt. Smoot approached the subject and asked him questions, the man began walking away from the officers.  Jefferson asked the man to stop and the man quickened his pace.  Jefferson then got out of the police vehicle and began to follow the man.  Jefferson saw the man walk between two vehicles located in a parking lot adjacent to the nightclub.  The man was about twenty-five feet away from Jefferson when he quickened his pace and walked between the cars.  The man's back was toward Jefferson when he lifted his shirt and placed his hand in his waistband and then bent over.  Jefferson then displayed his weapon and told the man to raise his hands.  At that point, Jefferson heard a noise of something metal hitting the ground.  Lt. Smoot detained the man and placed him under arrest.  The man stated "he wasn't doin nothin [sic] . . ."  Moments after the man was detained, Jefferson retrieved a firearm from the location where he saw the man bend over and where he heard the sound of metal hitting the ground.  The man, who was later identified as Donald Tate, was transferred to the police station where record checks revealed that he was a convicted felon.

## Conclusions of Law

In his motion to suppress evidence and statements, Tate contends that the tip from the witness did not contain sufficient indicia of reliability to justify a *Terry* stop, and was therefore insufficient, by itself, to give officers a reasonable suspicion to stop him. He claims that the police unlawfully detained him and that any statements made to officers should be suppressed and that any evidence seized should likewise be suppressed.

A police officer may stop and question a person if they have a reasonable, articulable suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1 (1968). In *Terry*, the Court stated that "in determining whether the search and seizure were 'unreasonable' the inquiry is a dual one–whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19-20. When justifying a stop, police officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. (footnote omitted).

In arguing that the tip did not have sufficient indicia of reliability to justify a *Terry* stop, Defendant relies on *Alabama v. White*, 496 U.S. 325 (1990). In *White*, police received an anonymous tip by telephone that a female would be leaving a particular apartment, at a particular time, carrying a brown case containing drugs. *Id*. at 327. The tip also included a description of the vehicle the female would be traveling in, and the location to which she would be traveling. *Id.* Police went to the apartment and observed a female exit the apartment building and get into a vehicle matching the description provided in the tip. *Id.* Officers followed the vehicle as it traveled the most direct route to the location specified in the tip; officers stopped the vehicle just short of the location and received permission to search the vehicle. *Id*. The consensual search of the vehicle

revealed drugs in a brown case. *Id.*

The Supreme Court found that the anonymous tip standing alone would not "'warrant a man of reasonable caution in the belief' that the stop was appropriate." *Id.* at 329 (citing *Terry*, 392 U.S. at 22). However, the Court found that the officers acted on more than the tip itself and that the required degree of suspicion to justify a *Terry* stop is not as high as what is needed to establish probable cause. *Id.* The Court then outlined the difference between the probable cause and reasonable suspicion standards as set out in *United States v. Sokolow*, 490 U.S. 1,7 (1989):

> The officer [making a *Terry* stop] . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."' The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause.

*White,* 496 U.S. at 329-30 (alteration in original) (internal citations omitted). The Court went on to note that "[r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' *United States v. Cortez*, 449 U.S. 411, 417 (1981), that must be taken into account when evaluating whether there is reasonable suspicion." *White*, 496 U.S. at 330. The *White* Court found that under the totality of the circumstances, the anonymous tip, as corroborated by the police, exhibited sufficient indicia of reliability to justify the investigatory stop of the defendant's car. *Id.* at 332.

The facts of the case before this Court are similar to the case of *Adams v. Williams*, 407 U.S. 143 (1972). In *Williams*, a police officer was on car patrol duty in a high-crime area and a person known to him approached his cruiser and told him that an individual seated in a nearby vehicle was

carrying narcotics and had a gun at his waist. *Id.* at 144-145. The officer approached the vehicle, tapped on the window and when Williams rolled down the window, the officer reached into the car and retrieved the gun from Williams' waistband. *Id*. at 145. Relying on *Terry*, the Court found that the officer acted justifiably in responding to the informant's tip. *Id.* at 146. The court stated:

> [t]his is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. . . Thus, where the [Supreme]Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, *see*, *e.g.*, *Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop.

*Williams*, 407 U.S. at 146-47.

Like the situation in *Williams*, the incident here occurred in a high-crime area and the witness "came forward personally to give information that was immediately verifiable at the scene." *Williams*, 407 U.S. at 146. The witness told officers that Tate had a gun on him and pointed to Tate, who was on a corner about fifty yards from Officer Jefferson. When officers approached Tate and attempted to talk to him, Tate began to walk away, and he quickened his pace after being told to stop. Jefferson followed Tate into a parking lot where he saw Tate reach into his waistband and let something drop to the ground, which sounded like metal. Considering the totality of the circumstances, the Court finds that officers had a reasonable, articulable suspicion of criminal activity. *See United States v. Willis*, 967 F.2d 1220, 1223 (Holding that the defendant's conduct in fleeing and dropping and a bag provided police with the reasonable suspicion that warrants a *Terry* stop). Therefore, the undersigned finds that officers were justified in detaining Tate and seizing the weapon.

## CONCLUSION

Therefore, as noted above, the evidence in this matter should not be suppressed. In addition, any statements made by Tate to the officers should not be suppressed.

In accordance with the above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Statements and Evidence [Doc.#21] be **DENIED.**

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of July, 2011.